[Civ. No. 10950.  Second Appellate District, Division One.—October 17, 1936.]

HERMAN HILBERT et al., Respondents, v. LUTHER OLNEY et al., Appellants.

Lasher B. Gallagher and James L. King for Appellants.

S. S. Hahn and W. O. Graf for Respondents.

DESMOND, J., *pro tem.*—By a verdict of a jury, the plaintiffs, widow and minor children of Otto Hilbert, had judgment in the sum of $20,000 against defendants Luther Olney and a copartnership, Broomcrist & Wiedeman. The defendants claimed that the verdict was not supported by the evidence and moved for judgment notwithstanding, which motion the court ordered denied. The appeal is from the judgment solely, according to the notice of appeal, but since both parties in their briefs treat the appeal as taken also from the order denying motion for judgment notwithstanding, we shall so consider it. Appellants contend that the court erred in the rulings upon evidence, upon motions made, and in giving and refusing to give certain instructions.

Olney was a truck driver employed by the partnership and, about 3 A. M. of June 6, 1935, on the Valley Boulevard about a mile west of Puente, drove his Mack truck into a Chrysler roadster belonging to deceased. At the time of the collision, deceased, an automobile mechanic, was engaged in repairing an International truck, to which he had been called by the driver, one Harry Moore. As a result of this collision both Moore and Hilbert were killed, their bodies being found in the highway immediately after the accident, and the International truck was knocked astraddle of a ditch on the north side of the boulevard. The Chrysler roadster burned on the highway. Moore had been driving in a westerly direction, and experiencing some trouble with his car had gone back to Puente to Haddick's garage and summoned Hilbert to his assistance. Witnesses testified that just prior to the accident, Moore's truck was partly on the pavement and partly on the dirt near to or forming the southerly slope of the ditch and that Hilbert's roadster was just to the rear of the truck with the beams of its headlights thrown on the back end of the vehicle. There was testimony also that tail-lights on both truck and roadster were burning, that clearance lights were burning on the truck and that there was a flare blazing between them. It was stipulated at the opening of the trial that prior to the accident the Chrysler was not disabled and that the only defect in or about the International truck was a puncture or blowout of one of the rear right tires. Testi-

mony of one of the witnesses, however, was that as he passed the two vehicles just before the accident ''I noticed one man lying underneath the truck as though he was working on the rear right wheel. He was between the drive-axle; he was lying on his stomach and was lying approximately cross-ways of the road.''

Section 136 of the California Vehicle Act provides in clause (a) as follows: ''(a) No person shall park or leave standing any vehicle whether attended or unattended upon the paved or improved or main traveled portion of any public highway, outside of a business or residence district when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway; provided, in no event shall any person park or leave standing any vehicle whether attended or unattended upon any public highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for the free passage of other vehicles thereon.'' (Deering's Gen. Laws, 1931, p. 2517.)

Appellants contend that Hilbert was guilty of contributory negligence as a matter of law in parking his roadster partly on the main traveled road in the rear of the International truck, in violation of this statute, claiming that it was not impracticable for him to have placed the Chrysler altogether off the main traveled portion of the highway. Whether or not this was so would seem to have been a question of fact to be decided by the jury. We note that at the scene of the accident the trial judge addressed the jurors as follows: ''Ladies and gentlemen of the jury, I anticipate that one of the issues in this case will be whether or not the car got off the road as far as practicable. Now, you observe the conditions along here, the conditions of the road, the dirt, and along the side of the road, and everything in connection with the scene of the accident.'' Also that one of his instructions to the jury was the above-quoted clause (a) of section 136, California Vehicle Act. But, assuming that it was altogether practicable for the Chrysler to have been placed completely off the main traveled portion of the highway, it does not follow, necessarily, that deceased was chargeable with contributory negligence. ''Contributory negligence is a question

of law only when the court is impelled to say that from the facts reasonable men can draw but one inference and that an inference pointing unerringly to the negligence of the plaintiff contributing to his injury.'' (*Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335, 343 [208 Pac. 125]. See, also, *Smith* v. *Southern Pacific Co.*, 201 Cal. 57 [255 Pac. 500]; *Flores* v. *Fitzgerald*, 204 Cal. 374, 376 [268 Pac. 369]; *Mast* v. *Claxton,* 107 Cal. App. 59, 64 [290 Pac. 48].) In *Skaggs* v. *Wiley*, 108 Cal. App. 429, an automobile collision case in which the Supreme Court denied a hearing, the rule where a traffic regulation is violated is stated as follows, at page 433 [292 Pac. 132]: '' . . . a failure to observe the statutory requirement as to speed will, if the same proximately causes or contributes to the injury complained of, constitute negligence as a matter of law, the principle that a violation of the statute is negligence *per se* being subject to the limitation that the act or omission must proximately cause or contribute to the injury (citing cases), and when the evidence is conflicting or any reasonable man might differ as to the inferences which ought to be drawn from the evidence this question is one for the jury. (*Smith* v. *Occidental etc. Steamship Co.,* 99 Cal. 462 [34 Pac. 84].) ''

In determining, in the instant case, whether any act or omission of the deceased proximately contributed to or caused his death the jury was bound to consider the evidence before it. From this evidence it appeared in the words of one witness that ''the truck that was coming from behind hit the Chrysler roadster and knocked it into the other truck''. The damage to the roadster indicated the same thing and defendant Olney referred to the International truck as ''The one that the Chrysler came in contact with.'' From these and other circumstances, the jury may have concluded that if deceased had parked his roadster two or three hundred yards west of the International truck instead of immediately east of it, or if he had gone to the scene of his last labors on foot, this crash and the resulting deaths would have occurred just the same. In fact this jury may have believed that instead of being a proximate cause of the accident, the placing of the Chrysler where it was should have been a means for preventing it. One witness, a watchman at a mill approximately a half mile away, on

making his rounds at 3 o'clock noticed from the roof of a four-story building the lights upon the highway, particularly "three red lights, and lights shining from a car onto the back end of a truck". Another witness, Southwell, testified that he saw the lights on the two cars from a distance of 1500 feet as he drove toward them in a westerly direction, ". . . it was a truck standing there; and there was another car was standing behind with the lights—with I should say a spotlight on it, was shining on the back of the truck". He later in his testimony said, "They had a spotlight on the back end of the Chrysler that was sitting there . . . It was shining back up the road toward Puente." This the witness recalled as a red light and Haddick testified that the Chrysler was equipped with an extra large tail-light, that "there used to be a little, small tail-light on there, and we put on. a large one with a larger red glass in it, because we used the car for running up and down the road on trouble jobs".

Referring again to *Skaggs* v. *Wiley, supra,* we note that "a reviewing court is not justified in disturbing a judgment unless it appears that upon no hypothesis is there sufficient substantial evidence to support it (*People* v. *Tom Woo,* 181 Cal. 315 [184 Pac. 389]), nor can it review a finding based upon a reasonable inference, though in its judgment the opposite inference is the more probable (2 Cal. Jur., Appeal and Error, sec. 549, p. 395; *Ryder* v. *Bamberger,* 172 Cal. 791 [158 Pac. 753]), . . . In view of the excessive speed of the defendant and the other circumstances shown, the court might reasonably have concluded that the sole proximate cause of the collision was defendant's negligence, and had plaintiff been traveling at the speed allowed by law the collision would nevertheless have occurred and that he would not have escaped injury. Under all the circumstances the question was one for the trial court (citing cases) and we cannot say that its finding is unsupported."

Southwell testified that when he was a short distance east of the point where Moore's truck was being repaired and while running at 30 miles per hour, he swung to the left into the center lane of this three-lane pavement, preparatory to passing; that Olney, going at approximately 40 miles per hour, passed him on the left, that is, in the ex-

treme southerly lane, and cut in ahead of him by a margin of a few inches when only about 100 yards from the International truck and the Chrysler. ''Well, when he passed me he swung in right short and almost caught my front fender on my left side, he swung right back to the north side of the road again, and about three to four hundred feet of when I was fixed to pass the truck, the one that was standing . . . He swung right back in and plowed into that little Chrysler that was sitting behind the big truck.''

And so as in *Skaggs* v. *Wiley, supra,* the jury ''might reasonably have concluded that the sole proximate cause of the collision was defendant's negligence''.

Appellants feel that they should have been allowed to show that the International truck was not so disabled as to prevent its being moved completely off the highway, but, as will be noted from our views above expressed, such testimony would be immaterial, and we believe was properly rejected. ██ It is also contended that the court erred in giving the following instruction: ''I instruct you that the California Vehicle Act in force and effect at the time of the accident herein referred to provided among other things as follows: 'It shall be unlawful for the driver of a motor truck towing a trailer or semi-trailer to drive the same at a speed in excess of 25 miles per hour upon any public highway.' '' The objection is that the Mack truck was a tractor and a semi-trailer, not a motor truck towing a semi-trailer. The jury heard Olney answer counsel's question ''Was it a tractor or a trailer or truck and trailer?'' by the words, ''It was a tractor and then a semi-trailer,'' so if the instruction should not have been given as being inapplicable to the facts it is quite possible that the jury ignored it. At any rate, if error arose in the giving of this instruction we cannot believe on the record of this case that it was prejudicial error warranting reversal. As the Supreme Court has said, speaking through Mr. Justice Conrey, in the recent case of *Shuey* v. *Asbury,* 5 Cal. (2d) 712, 713 [55 Pac. (2d) 1160] : ''It is now settled law that a judgment will not be reversed by reason of an erroneous instruction, unless upon consideration of the entire case, including the evidence, it shall appear that such error has resulted in a miscarriage of justice.''

We find no merit in the objections of appellants as to other instructions given and refused.

The judgment and order are affirmed.

York, Acting P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 10, 1936, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 14, 1936.